BILL'S COAL COMPANY, INC., et al.

v.

BOARD OF PUBLIC UTILITIES OF SPRINGFIELD, MISSOURI, et al.

Nos. 82–1297, 82–1303.

United States Court of Appeals, Tenth Circuit.

July 14, 1982.

Majority Opinion July 6, 1982, see 682 F.2d 883.

BARRETT, Circuit Judge, dissenting:

It is my view that the District Court correctly concluded that Bill's Coal's demand for more than it was entitled under the contract with Utility constitutes a repudiation under Section 2–610 of the Missouri Uniform Commercial Code (20A U.A.M.S. § 2–610), fully justifying the Court's January 29, 1982, order dissolving the injunction. Thus, I would affirm the District Court.

The main issue generating this litigation involves the "take-out" provision of the 1979 amendment to the coal contract. That provision states, *inter alia*, that if Utility can secure a bid ... "at a delivered price of at least 25% less than the price quoted by [Bill's Coal] (adjusted to eliminate the depreciation credit referred to in paragraph 6) ... [Utility] may by written notice cancel this agreement as of the end of the then current fiscal year."

Utility had until March of the year to exercise the take-out provision. At a meeting later in the same day that the 1979 amendment was drafted, an attorney representing Bill's Coal noted that the contract language could be viewed to require a comparison of Bill's Coal quoted f.o.b. mine price to any competitor's delivered price. However, this attorney stated then that such was not the intention of the parties; rather, the parties agreed and intended that a comparison under the take-out clause would be delivery price versus delivery price.

In December, 1979, Bill's Coal became aware that Utility was going to solicit bids and attempt to utilize the "take-out" provision. Bill's Coal then formulated a "plan" to block a take-out by insisting that Utility make a comparison of Bill's Coal's f.o.b. mine price to competitors' delivered price. When Bill's Coal supplied Utility with its f.o.b. mine price for 1980, it also "demanded" that Utility make the bid comparison in accordance with Bill's Coal's "plan". An agent of Utility vehemently rejected Bill's Coal's proposed comparison formula and informed Bill's Coal if it insisted on the formula that Utility would see Bill's Coal in court.

Inasmuch as Bill's Coal's mine is located substantially closer to Springfield's power plant than any of its competitors, a comparison between Bill's Coal's f.o.b. mine price to competitor's delivery price could hardly, if ever, result in a bid sufficient to trigger the take-out provision. Bill's Coal's f.o.b. mine price was substantially higher than any competitor's f.o.b. mine price.

Utility proceeded to solicit bids and to compare Bill's Coal's f.o.b. mine price to competitors' f.o.b. mine price. On March 27, 1980, Utility gave Bill's Coal notice of termination under the take-out clause. Utility thereafter filed a declaratory judgment action against Bill's Coal seeking a declaration of the relative rights and liabilities of the parties under the 1979 amendment. Bill's Coal filed a separate action against Utility for breach of contract. Bill's Coal's action was subsequently consol-

idated with Utility's action. In all of its pleadings, Bill's Coal held fast to its interpretation of the comparison language of the take-out clause.

The parties agreed that the litigation should be divided into three phases. Phase I involved the interpretation of the take-out clause. The Court concluded that the take-out provision called for a delivery price versus delivery price comparison. It was only after this court finding that Bill's Coal finally abandoned its interpretation of the take-out clause. *It amended its pleadings to assert that the contract language was ambiguous and that the parties had always intended a delivery versus delivery price comparison. In response, Utility amended its complaint to allege anticipatory repudiation and bad faith on Seller's part.*

Phase II was conducted to determine liability. The Court found anticipatory repudiation by virtue of Bill's Coal's demand that Utility use a different price comparison than that which the parties had agreed to. The District Court recognized that although this is an unusual case on its facts, for anticipatory repudiation, the law appears clear that if a party, in bad faith, demands performance of the other party beyond the terms of the contract, and the demanding party conditions his own performance on the injured parties' performance of the additional terms, then there is an anticipatory repudiation by the demanding party. The District Court thus found anticipatory repudiation. It specifically found that Bill's Coal's interpretation of the take-out provision was the result of bad faith in that it was not an honestly held interpretation because Bill's Coal had agreed to a different interpretation. The Court also found a separate cause of action for bad faith.

Based upon these conclusions, the District Court dissolved the injunction, and rendered detailed findings of fact and conclusions of law with which I agree. Specifically, the Court found that because Bill's Coal admitted that it knew at all times that the parties had in fact agreed to the delivery price versus delivery price interpretation of the "take-out" provision of the 1979 amendment, Bill's Coal did not entertain an honest mistake of contract interpretation when it insisted on its f.o.b. versus delivery price position. This, the Court concluded, was a bad faith contention. I agree.

When a party practices fraud, *i.e.*, assertion of a position it knows to be absolutely contrary to the agreement, it repudiates the contract if this false assertion, as here, impairs the value of the contract. This principle applies here inasmuch as the practical effect of Bill's Coal's false interpretation was to block any "take-out" and thus lock Utility into Bill's Coal's price. It follows that by forcing Utility to pay what may well be exorbitant prices under the contract, Bill's Coal impaired the value of the contract to Utility.

The majority opinion anchors its holding, it seems to me, on the proposition that Bill's Coal has "performed" under the contract because it has, at all times, delivered coal to Utility. This holding does not meet the issues addressed by the District Court relating to performance. What was the full performance promised? In terms of money values, it had to be Bill's Coal's promise to permit Utility to exercise the "take-out" provision in good faith by obtaining bona fide competitive bids based on delivery price versus delivery price. This plain intent was absolutely frustrated by the bad faith practiced by Bill's Coal. This bad faith could not be corrected. Accordingly, we are not here dealing with mere "deviations" from full performance which are inadvertent or unintentional. The "deviation" here is all pervasive and due to Bill's Coal's bad faith. It impaired the structure of the contract as a whole. It cannot be "repaired" and thus the contract must be terminated.

We have here an admitted, acknowledged manifestation on the part of Bill's Coal to frustrate the "termination" clause of the contract. The intention is unequivocal. *Restatement of Contracts*, (First), §§ 314, 315 and 318 (1932), as supplemented, states that in a bilateral contract, one who has failed, without justification, to perform all

or any part of what is promised in a contract has breached it (here, Bill's Coal's refusal to recognize the right of Utility to receive proper competitive bids) and, further, that one who, like Bill's Coal, has prevented or hindered Utility from determining whether it is bound to the condition of further purchases of coal from Bill's Coal (performance of a return promise to purchase) is guilty of an anticipatory breach which constitutes a total breach of contract. Under § 318(a) it is stated that "... a positive statement to the promisee or other person having a right under the contract, indicating that the promisor will not or cannot substantially perform his contractual duties" constitutes an anticipatory breach.

U.C.C. § 2–610, Comment 1 states that "anticipatory repudiation centers upon an overt communication of intention or an action which renders performance impossible or demonstrates a clear determination not to continue with performance." In *Neal-Cooper Grain Co. v. Texas Gulf Sulphur Co.*, 508 F.2d 283 (7th Cir. 1974), relied upon by the trial court, it was held that although a demand by a party to a contract for more than the contract calls for in the way of counter-performance is not in itself a repudiation, when a fair reading leads to the conclusion that it amounts to a statement of intention not to perform except on conditions which *go beyond the contract, it becomes a repudiation.* "In order to constitute an anticipatory breach of contract, there must be a definite and unequivocal manifestation of intention on the part of the repudiator that he will not render the promised performance *when the time fixed for it in the contract arrives.*" 4 Corbin on Contracts, § 973, p. 905. [Emphasis supplied]. And, "Where the two contracting parties differ as to the interpretation of a contract ... an offer to perform in accordance with his own interpretation ... [will] constitute such a breach, [if] the offer ... be accompanied by a clear manifestation of intention not to perform in accordance with any other interpretation." 4 Corbin on Contracts, § 973 at p. 911.

I would dissolve the injunction we reinstated and affirm the District Court.